UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL MARRIOTT, Both Individually, and on
Behalf of a Class of Others Similarly Situated;
BARBARA DAVIS; and ANDY RIVERA;

                                        Plaintiffs,

                vs                                        5:03-CV-531

COUNTY OF MONTGOMERY; MONTGOMERY
COUNTY SHERIFF'S DEPARTMENT; MICHAEL
AMATO, Individually, and as Sheriff of the County
of Montgomery; JEFFREY SMITH, Individually, and
as Undersheriff of the County of Montgomery;
KEVIN SNELL, Individually, and as former Undersheriff
of the County of Montgomery; JOHN PECORA,
Individually, and as Jail Administrator in the Montgomery
County Sheriff's Department; and SUE BUDDLES,
Individually, and as Lieutenant in the Montgomery
County Sheriff's Department,
                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                        OF COUNSEL:

BERANBAUM MENKEN BEN-ASHER
   & BIERMAN LLP                                        BRUCE E. MENKEN, ESQ.
Attorneys for Plaintiffs                                JASON J. ROZGER, ESQ.
3 New York Plaza
New York, NY 10004
         and
32nd Floor
80 Pine Street
New York, New York 10005

ELMER R. KEACH, III, ESQ.
Attorney for Plaintiffs
One Steuben Place
Albany, New York 12207

MASON LAW FIRM                                        GARY E. MASON, ESQ.
Attorney for Plaintiffs                                CHARLES A. SCHNEIDER, ESQ.
Suite 500
1225 19th Street N.W.
Washington, DC 20036

WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER LLP                    THERESA B. MARANGAS, ESQ.
Attorneys for Defendants                  THOMAS W. HYLAND, ESQ.
677 Broadway, 9th Floor                   JOSEPH L. FRANCOEUR, ESQ.
Albany, New York 12207
        and
150 East 42nd Street
New York, New York 10017-5639

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**
**and**
**PERMANENT INJUNCTION**

## I. INTRODUCTION

Plaintiffs Paul Marriott ("Marriott"), Barbara Davis ("Davis"), and Andy Rivera ("Rivera") (collectively "plaintiffs") filed suit individually and on behalf of a class of others similarly situated, alleging that the policy of the Montgomery County Jail ("the Jail") providing for the search of all persons admitted to the Jail constitutes a strip search in violation of the Constitution of the United States.  Plaintiffs' motion to certify the class pursuant to Rule 23 was granted on March 25, 2005, and defendants were preliminarily enjoined from conducting the search at issue.  Marriott v. County of Montgomery, 227 F.R.D. 159 (N.D.N.Y. 2005) ("Marriott I").  The Second Circuit affirmed on November 22, 2005.  Marriott v. County of Montgomery, No. 05-1590-CV, 2005 WL 3117194, at *1 (2d Cir. Nov. 22, 2005) ("Marriott II").

On October 14, 2005, defendants' motion to dismiss plaintiffs' complaint against defendant Montgomery County Sheriff's Department and defendants Michael Amato ("Sheriff Amato"), Jeffrey Smith ("Smith"), Kevin Snell ("Snell"), John Pecora ("Pecora"), and Sue Buddles ("Buddles") in their official capacities was granted, as the County of Montgomery ("the County") is liable for the acts of the Montgomery County Sheriff's Department and the

above defendants in their official capacities as employees of the County.[1]  The claims against Sheriff Amato, Smith, Snell, Pecora, and Buddles in their individual capacities remain. Additionally, defendants' motion for partial summary judgment dismissing plaintiffs' claims for compensatory damages, punitive damages, and attorney fees was denied.[2]

Plaintiffs, on behalf of the certified class, now move for partial summary judgment against the County and Sheriff Amato on the issue of liability.  They also seek a permanent injunction against defendants, as well as interim attorneys' fees for plaintiffs' counsel.  Further, plaintiffs move to preclude the testimony of defendants' expert witness, George M. Camp ("Camp").  Defendants oppose, and move for a certificate of appealability, pursuant to 28 U.S.C. § 1292(b), regarding the October 14, 2005, denial of their motion for partial summary judgment dismissing plaintiffs' claims for compensatory damages, punitive damages, and attorney fees.  Plaintiffs oppose.

Oral argument was heard on December 15, 2005, in Utica, New York.  Decision was reserved.

## II.  FACTS

The Jail has a specific, written policy that provides procedures for admitting/booking inmates into the Jail.  This admissions policy, which has been in effect since July 1, 1996, provides for an initial pat-down search of admittees upon their entrance into the facility.  (See generally Docket No. 90, Pls.' Ex. D, ¶ 12.)  The Jail has a separate policy which defines the

---

[1]  A summary order was entered on the record pursuant to the oral decision rendered on October 14, 2005.

[2]  Defendants' motion to dismiss the claim for punitive damages was denied without prejudice.

different types of searches that may be conducted by a Corrections Officer ("CO") and

delineates the circumstances in which each search should be used.

Upon a determination that an admittee would be housed at the Jail (i.e., would not

make bail), the admissions policy provides for an officer to facilitate the admittees' change

from street clothes into Jail attire, as follows:

> the booking officer will escort the inmate to the shower area where the
> inmate will disrobe and place all clothes in the bag provided by the officer,
> and be required to take a shower.  A.  All persons and personal property
> shall be searched in accordance to the law.  Solely to prevent the
> introduction of contraband to the facility . . .

Id.  Defendants refer to this portion of the admission process as a "change-out" procedure.

Pursuant to the "change-out" procedure, when an admittee was being processed for housing

at the Jail, a CO (who is the same sex as the admittee) directs the admittee to remove his or

her clothing and place it in a bag; the admittee must then shower.  During the "change-out,"

the CO would conduct a visual inspection of the admittee's naked body.  (Docket No. 90, Pls.'

Ex. I, Pecora Dep. at 42, 65.)[3]  After showering, the admittee dried off, then donned the prison

garb that was provided.  The admissions policy, hence the "change-out" procedure, applies to

everyone who is admitted to the Jail.

---

[3]  The true purpose of the visual inspection of the admittee's naked body is not clear.  Defendant
Pecora, a Jail Administrator at the relevant times, testified that COs viewed the naked inmate to see if
there were any gang tattoos indicating a gang affiliation.  (Docket No. 90, Pls.' Ex. H, Pecora Dep. at 122-
23, 126-35; Ex. I, Pecora Dep. at 58-59.)  Other COs testified that in addition to noting any tattoos, the
purpose of the "change-out" was to prevent the introduction of contraband into the Jail.  (Docket No. 90,
Pls.' Ex. K, Denton Dep. at 35-36, 51-52; Ex. J, Buddles Dep. at 34-35; Ex. N, Robinson Dep. at 76, 79;
Ex. M, Hurd Dep. at 42.)  Another CO testified that the purpose of the "change-out" was for hygiene, not
to detect contraband or tattoos.  (Docket No. 90, Pls.' Ex. L, Gardner Dep. at 57.)

Thankfully, the analysis of today's motion does not require a determination of the true purpose of
the "change-out."  Analysis turns on the nature of the "change-out," and the fact that it was the standard
procedure for every admittee that was housed at the Jail.  What is important is that each admittee was
required to remove his or her clothing and allow a CO to view his or her naked body absent reasonable
suspicion; what each CO believed the purpose of the "change-out" to be is non-determinative of this
motion.

The representative plaintiffs in this case - Marriott, Davis, and Rivera - were all arrested on misdemeanor charges and subjected to the written Jail "change-out" procedure.[4] While Marriott and Davis allege that in addition to the shower and visual inspection of their naked bodies, they were directed to submit to various commands while naked, including bending over in front of the CO and spreading the lobes of their buttocks, *at a minimum*, they all were forced to remove their clothing and shower in view of the CO conducting their "change-out" procedure.  They brought suit on behalf of themselves, as well as those similarly situated, claiming that the "change-out" procedure was an unconstitutional policy, practice, and custom of conducting strip searches of admittees arrested for misdemeanor offenses, absent reasonable suspicion that the admittee was concealing weapons or contraband.  They sought class certification pursuant to Federal Rule of Civil Procedure 23, as well as a preliminary injunction enjoining defendants from performing the "change-out" procedure absent reasonable suspicion.  Defendants cross-moved for summary judgment.

On March 25, 2005, defendants' cross-motion for summary judgment was denied, and plaintiffs' motion for class certification was granted.[5]  See Marriott I, 227 F.R.D. 159.  The

---

[4]  Marriott was admitted to the Jail on September 13, 2001, on misdemeanor Agriculture and Markets violations relating to failure to feed and water five horses; Davis was admitted on May 2, 2001, based on a civil family court warrant, after missing a court date in Family Court; and Rivera was admitted on June 1, 2004, on a misdemeanor second degree aggravated harassment charge.

Additionally, non-party Jacqueline Ashline ("Ashline") agreed to serve as a named plaintiff and class representative.  On April 6, 2001, she was brought to the Jail as a pre-trial detainee; she was charged with driving while intoxicated, a Vehicle and Traffic Law offense.  After being fingerprinted, she was taken by a female CO to the shower room.  The CO required her to remove all of her clothing and take a shower.  She complied.  The CO watched Ashline disrobe and shower.  After showering, Ashline dried off.  The CO left the shower room and then passed a Jail uniform to Ashline through a window in the room.

[5]  Plaintiffs met the numerosity, commonality, typicality, and adequacy of representation prerequisites of Rule 23(a), as well as the requirements for certification of Rule 23(b)(2) and 23(b)(3). Marriott I, 227 F.R.D. at 171-73.

Jail's "change-out" policy was found to be a strip search. Id. at 175.   Plaintiffs' certified class

was defined as follows:

> All persons in the United States who have been or will be placed into the
> custody of the Montgomery County Jail after being charged with
> misdemeanors, violations, violations of probation or parole, traffic
> infractions or other minor crimes, or held on civil matters, and were or will
> be strip searched upon their entry into the Montgomery County Jail
> pursuant to the policy, custom and practice of the Montgomery County
> Sheriff's Department and the County of Montgomery. The class period
> commences on April 29, 2000, and extends to the date on which the
> Montgomery County Sheriff's Department and/or the County of
> Montgomery are enjoined from, or otherwise cease, enforcing their
> unconstitutional policy, practice and custom of conducting strip searches
> absent reasonable suspicion.  Specifically excluded from the proposed
> class are Defendants, and all of their respective affiliates, legal
> representatives, heirs, successors, employees or assignees.

Id.  Further, as the "change-out" procedure was tantamount to a strip search, and conducted

absent reasonable suspicion, defendants were

> PRELIMINARILY ENJOINED from conducting a strip search, as set forth
> in the Jail's change-out procedure, with regard to all persons being placed
> into the custody of the Montgomery County Jail after being charged with
> misdemeanors, violations, violations of probation or parole, traffic
> infractions or other minor crimes, or held on civil matters, without
> reasonable suspicion that such persons are secreting contraband and/or
> weapons.

Id.  The Second Circuit affirmed, holding that "plaintiffs have shown a substantial likelihood of

establishing that the Jail's current strip search policy is unconstitutional."  Marriott II, 2005 WL

3117194, at *1.

## III.  DISCUSSION

### A.  Plaintiffs' Motion for Partial Summary Judgment

When considering a motion for summary judgment, evidence is viewed in the light

most favorable to the non-moving party, and all reasonable inferences are drawn in her favor.

Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002).  It is well settled that summary judgment must be granted only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 436 (2d Cir. 1999).  An issue is "genuine" if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party.  Liberty Lobby, 477 U.S. at 248-49, 106 S. Ct. at 2510-11.

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact, as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  Once the moving party has met this burden, the party opposing the motion for summary judgment must produce specific evidence establishing the existence of a genuine factual dispute that a reasonable jury could find in its favor.  Fed. R. Civ. P. 56; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  It cannot rest upon "mere allegations or denials" asserted in its pleadings.  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1999).

To withstand a summary judgment motion, sufficient evidence must exist upon which reasonable factfinders could resolve the issue in favor of the nonmovant.  Liberty Lobby, 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Thus, summary judgment is proper where there is "little or no evidence . . . in support

of the non-moving party's case."  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

Plaintiffs seek partial summary judgment, contending that the undisputed facts in this case show that prior to the issuance of the preliminary injunction and pursuant to the policy of the County, all arrestees admitted into the Jail were strip searched upon admission, absent reasonable suspicion.  As the Jail's "change-out" policy is tantamount to a strip search, plaintiffs argue that partial summary judgment on the issue of liability against the County and Sheriff Amato is proper.

Defendants oppose and claim that there are issues of material fact as to the actual policy and procedure of the "change-out" that preclude summary judgment.  They allege that the admissions policy, including the "change-out," is constitutional as written, and because the written policies are constitutional, there is insufficient evidence to determine the material factual issue of whether a policy and practice of performing unconstitutional inspections of every naked arrestee at admissions existed.

The Second Circuit has repeatedly held that the Fourth Amendment precludes prison officials from performing strip searches and/or body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest. Shain v. Ellison, 356 F.3d 211, 214 (2d Cir. 2004); N.G. v. Connecticut, 382 F.3d 225, 232 (2d Cir. 2004); Walsh v. Franco, 849 F.2d 66, 69 (2d Cir. 1988); and Weber v. Dell, 804 F.2d 796,

802 (2d Cir. 1986).[6]  "[I]ndiscriminate strip-searching of misdemeanor arrestees is

unconstitutional."  Walsh, 849 F.2d at 70.  This is established federal law.

In Marriott I, it was determined that defendants' "change-out" procedure was

tantamount to a strip search.  227 F.R.D. at 169 ("This procedure squarely fits both the

common and legal definitions of strip search . . . Using different terminology, such as change-

out, does not change the observation of a naked admittee to anything other than what it is - a

strip search.").[7]  Given that defendants' strip search procedure was applied to each

misdemeanor arrestee, without an individual determination of reasonable suspicion, both

Marriott I and the Second Circuit, in affirming the Marriott I decision, found that there was a

"strong likelihood that the strip search at issue here, conducted as a matter of course without

reasonable suspicion, will be found violative of the Fourth Amendment under Weber and its

progeny."  Id. at 174 (citations omitted); see also Marriott II,  2005 WL 3117194, at *1

("plaintiffs have shown a substantial likelihood of establishing that the Jail's current strip

search policy is unconstitutional").

Here, plaintiffs move for partial summary judgment as to liability, contending that

defendants' strip search policy, which was applied to all arrestees that were admitted to the

Jail, absent any determination of reasonable suspicion, is unconstitutional.  They contend that

---

[6]  Indeed, in N.G., the Second Circuit noted that all circuits that have considered this issue have reached the same conclusion, i.e., that strip searches performed on arrestees confined for minor offenses, absent reasonable suspicion, are unconstitutional. 382 F.3d at 232 (listing cases).

[7]  "'Strip search' is often used as an umbrella term that applies to all inspections of naked individuals." N.G., 382 F.3d at 228 n.4.  Both the common and legal definitions of strip search show that it is a search conducted after a person's clothes have been removed.  The common definition of strip search is "to search (a person) by requiring removal of the clothes."  Webster's New World Dictionary 1328 (Victoria Neufeldt & David B. Guralnik, eds., 3d College ed. 1988).  As a legal term, strip search means "[a] search of a person conducted after that person's clothes have been removed, the purpose usu[ally] being to find any contraband the person might be hiding."  Black's Law Dictionary 1378-79 (8th ed. 2004).

there are no issues of material fact as to the unconstitutionality of the strip search, as (1) all arrestees that were admitted to the Jail (2) were required to remove their clothing in front of a CO and take a shower, (3) regardless of the nature of their crime and without any determination that there was a reasonable suspicion that they possessed contraband. Plaintiffs allege that defendants have admitted to these facts, and under <u>Weber</u> and its progeny, defendants' strip search policy is unconstitutional.

Plaintiffs are correct that defendants have admitted those very facts that make their policy unconstitutional.  In various stages of the litigation, defendants have admitted that the "change-out" policy applied to all admittees, and that during the procedure, arrestees were required to remove their clothes in front of a CO and shower.  In their papers, defendants stated that "[t]he arrestee is asked to disrobe in front of the officer and either place their clothes in a property bag or hand them to the booking officer and to take a shower . . . An Officer of the same sex, remains in the room during disrobing."  (Docket No. 109, Defs.' Mem. Supp. Summ. J. at 3.)  Pecora, a former Jail Administrator and defendants' designated Rule 30(b)(6) deponent, testified at different times that during the "change-out" procedure, the CO would do a visual inspection of the arrestee's body.[8]  (<u>See</u>, <u>e.g.</u>, Docket No. 90, Pls.' Ex. I, Pecora Dep. at 42, 65.)  Further, defendants' counsel gave the following account at oral argument:

---

[8]  In their Memorandum opposing summary judgment, defendants attempted to discredit their own sworn Rule 30(b)(6) deponent, claiming that his "knowledge is not the best evidence as it is second-hand."  (Docket No. 207, Defs.' Opp. Mem. at 12.)  However, as a Rule 30(b)(6) witness, Pecora's testimony is binding upon defendants.  <u>See</u> e.g., <u>Reilly v. Natwest Markets Group, Inc.</u>, 181 F.3d 253, 268 (2d Cir. 1999); <u>Sabre v. First Dominion Capital, LLC</u>, No. 01CIV2145BSJHBP, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity") (citations and quotations omitted).

> The Court: "Now . . . let me understand, the strip search we're talking about in this case is they take off their clothes, put them in a basket, and take a shower while being observed by the corrections officer of the same sex; is that right?"
> Mr. Francoeur:[9] "That's correct."
> The Court: "[The arrestees are] in the nude?"
> Mr. Francoeur: "Correct."
> The Court: "And how close is the guard to the person taking the shower in the nude?"
> Mr. Francoeur: "Fairly close.  Four, five feet, I believe . . . "

(Docket No. 171, Oral Argument Tr. 5-6, Oct. 22, 2004.)  Additionally, in their depositions, the COs all agreed that they were present when an admittee removed his or her clothing, and the admittee's naked body was visible to them.[10]

However, despite defendants' repeated admissions that the "change-out" procedure consisted of requiring all admittees, without particularized suspicion, to submit to a visual examination of their naked body, as well as a shower, they now claim that the "change-out" did not require the admittee to be naked.  They claim that the admissions policy containing the "change-out" procedure is constitutional as written, and that summary judgment is not appropriate.

As detailed above, defendants' "change-out" policy is contained in 12(A) of the admissions procedure, and specifies that when arrestees do not make bail,

> the booking officer will escort the inmate to the shower area where the inmate will disrobe and place all clothes in the bag provided by the officer, and be required to take a shower.  A.  All persons and personal property shall be searched in accordance to the law.  Solely to prevent the introduction of contraband to the facility . . .

---

[9]  Mr. Francoeur argued for defendants at this motion argument.

[10]  A more detailed account of the COs' behavior during the "change-out" procedure is found in Marriott I, 227 F.R.D. at 164-66.

- 11 -

(Docket No. 90, Pls.' Ex. D, ¶ 12.)  Defendants maintain that because the written policy doesn't involve either a command for the arrestee to undress completely or a command for the CO to inspect the naked arrestee, that the policy is constitutional.

Defendants' argument is seriously flawed.  First, constitutional analysis of a procedure does not stop with analysis of the written policy.  Both parties here have provided ample evidence that whatever the written policy stated, the procedure that was followed *in fact* by the COs required all admittees to remove their clothes, submit to a visual examination by the CO conducting the "change out," and shower, without the CO making any individual determination that the arrestee possessed contraband.  Constitutional words cannot erase unconstitutional conduct.

Second, it is far from clear that the admissions policy is constitutional as written. The policy calls for the arrestee to "disrobe and place all clothes in the bag provided by the officer, and . . . take a shower."  Id.  In its brief affirmance, the Second Circuit questioned the legality of the written jail policy, writing that "the written Jail policy itself appears to authorize such searches without reasonable suspicion, and Jail officers testified at their depositions to having often conducted them."  Marriott II, 2005 WL 3117194, at *1.  Defendants attempt to stretch reality by arguing in their papers that it is unclear that any arrestee ever removed all of their clothes and claiming that the arrestees were allowed to remain in their underwear, provided that the underwear was white.[11]  This assertion contravenes all of the prior testimony given by defendants and their officials - no CO, Jail administrator, or other official ever testified about arrestees and their white underwear.  Further, it is ridiculous to claim that an

---

[11] Defendants now claim that only those arrestees wearing non-white underwear were forced to fully disrobe.

arrestee would shower without removing his or her underwear.  The plain language of the policy - disrobe completely and shower, without any individualized determination that the arrestee is in possession of contraband - evinces an unconstitutional search.  Defendants' arguments to the contrary are without merit.

Finally, defendants highlight the fact that their COs had different interpretations of the purpose of the "change-out" and that the extent of the visual inspection differed amongst the COs.  They repeatedly claim that summary judgment is inappropriate, citing the language of Marriott I stating that "questions of fact exist as to what the policy and practice is of the Jail with regard to the change-out."  227 F.R.D. at 169.  However, they conveniently ignore the language in the following paragraphs that negate this very argument - "[t]he differences . . .  in the extent and purpose of the change-out procedure *do not change the fact that the admittees are required to strip naked in front of a CO and submit to the observation of their body by a CO.*"  Id. (emphasis added).  For constitutional analysis, it does not matter why each CO believed he or she was conducting the strip search; it matters only that *every admittee was subjected to the strip search*.  Period.  No questions of material fact remain.  All admittees had to remove their clothing and allow their naked bodies to be viewed by a CO.  Under Weber and its settled progeny, such conduct is unconstitutional.[12]

_____

[12]  Plaintiffs move to exclude the testimony of defendants' expert witness, David Camp, who was retained to "render expert opinion(s) regarding the constitutionality of certain conditions of confinement" at the Jail.  (Docket No. 203, Pls.' Ex. N to Keach Affirmation, Rule 26 Expert Report at 1.)

Expert witnesses cannot testify as to issues of law.  See e.g., United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991).  A review of Camp's proffered testimony provided by defendants in their response papers illustrates that Camp's testimony on this issue would be irrelevant.  It has been determined that the County's "change out" policy is tantamount to a strip search.  See Mariott I, 227 F.R.D. at 169.  Whether this is an unconstitutional strip search is a question of law; thus, Camp's testimony is unnecessary.  Plaintiffs' motion to preclude Camp's testimony will be granted.

The evidence submitted by the parties shows that there are no questions of material fact remaining on this issue.  Defendants' "change-out" policy is tantamount to a strip search. The settled law of this Circuit requires particularized suspicion before strip searching any person arrested for a misdemeanor or other minor offense.  Welsh, 849 F.2d at 69.  As defendants' policy does not require a finding of reasonable suspicion before conducting the "change-out" (strip search), and in fact mandated a strip search of all misdemeanor arrestees admitted into the Jail, defendants' policy is unconstitutional.

The County is liable for an unconstitutional policy when that policy was the "moving force" of the violation of a constitutional right.  Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2038-39 (1978).  As discussed in Marriott I, defendants are not entitled to the qualified immunity defense.  227 F.R.D. at 170.  Plaintiffs' motion for partial summary judgment on the issue of the liability of the County will be granted.[13]

## B.  **Plaintiffs' Motion for a Permanent Injunction**

Plaintiffs move for a permanent injunction identical to the preliminary injunction issued in Marriott I, claiming that because the County's "change out" policy is an unconstitutional strip search, they have demonstrated actual success on the merits. Defendants oppose this motion, alleging that it would be premature to issue a permanent injunction because material facts remain about the constitutionality of their "change out"

---

[13]  Plaintiffs have asked for summary judgment on the issue of liability on the part of the County and Sheriff Amato.  However, Sheriff Amato, along with defendants Smith, Snell, Pecora, and Buddles, was released from liability in his official capacity.  Plaintiffs have offered no further guidance as to why summary judgment would be appropriate for Sheriff Amato, in his individual capacity, at this time.  Thus, summary judgment for the liability of Sheriff Amato is not appropriate.

policy.  Because plaintiffs are entitled to partial summary judgment against the County for liability regarding the unconstitutional "change out" policy, their motion for a permanent injunction will be granted.

The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, except that the moving party, instead of showing a *likelihood of success* on the merits must show *actual success* on the merits.  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n. 12, 107 S. Ct. 1396, 1404 (1987) (citing Univ. of Texas v. Camenisch, 451 U.S. 390, 392, 101 S. Ct. 1830, 1832 (1981)).  A preliminary injunction should be issued only where the party seeking such relief shows "that it is likely to suffer irreparable injury if relief is denied [and] also that there is either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation, with a balance of hardships tipping decidedly in the [movant's] favor."  Proctor & Gamble Co. v. Chesebrough-Pond's Inc., 747 F.2d 114, 118 (2d Cir. 1984); Otokoyama Co. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir. 1999); Eng v. Smith, 849 F.2d 80, 81-82 (2d Cir. 1988).  Where "'a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous fair-ground-for-litigation standard should not be applied.'"  Brown v. Giuliani, 158 F.R.D. 251, 264 (E.D.N.Y. 1994) (quoting Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993) (internal quotation omitted)); Connecticut Dep't of Envtl. Protection v. OSHA, 356 F.3d 226, 230-31 (2d Cir. 2004) (noting that where a statutory or regulatory scheme is challenged, the more rigorous likelihood of success standard must be met).

Irreparable harm must be imminent, not remote or speculative.  Brown, 158 F.R.D. at 264 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

Where monetary damages cannot compensate for the injury, the harm is irreparable.  Id. (citing Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966)).  Further, "the alleged violation of a constitutional right triggers a finding of irreparable injury."  Conn. Dep't of Envtl. Prot., 356 F.3d at 231.

Here, plaintiffs, as a certified class, have standing to seek prospective injunctive relief.  Marriott I, 227 F.R.D. at 174.  As they allege a violation of a constitutional right, the harm is irreparable.  Id.  By succeeding on their motion for partial summary judgment, plaintiffs have also demonstrated actual success on the merits of their claim - as previously discussed, the "change out" is an unconstitutional strip search, violative of the Fourth Amendment.  Thus, plaintiffs have demonstrated that a permanent injunction is warranted.

### C.  Plaintiffs' Motion for Interim Attorneys' Fees

In 42 U.S.C. § 1988 ("section 1988"), those civil rights plaintiffs who are considered the prevailing party are provided an award of reasonable attorneys' fees.  Section 1988 specifies that "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the cost."  42 U.S.C. § 1988(b).  "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim."  Farrar v. Hobby, 506 U.S. 103, 111, 113 S. Ct. 566, 573 (1992).  This can occur without the plaintiff obtaining a favorable final judgment following a full trial on the merits.  See Hanrahan v. Hampton, 446 U.S. 754, 756-57, 100 S. Ct. 1987, 1988-89 (1980).  All the plaintiff must do to qualify as a prevailing party is to "obtain an enforceable judgment against the defendant from whom fees are sought."  Farrar, 506 U.S. at 111, 113 S. Ct. at 573 (citing Hewitt v. Helms, 482 U.S. 755, 760, 107 S. Ct. 2672, 2675 (1987).

"[A] judgment - declaratory or otherwise - 'will constitute relief, for purposes of § 1988, if and only if, it affects the behavior of the defendant toward the plaintiff.'" Id. at 506 U.S. at 110, 113 S. Ct. at 572 (quoting Rhodes v. Stewart, 488 U.S. 1, 4, 109 S. Ct. 202, 203 (1988). Thus, "judicial action other than a judgment on the merits or a consent decree can support an award of attorneys fees, so long as such action comes with it sufficient judicial imprimatur." Roberson v. Giuliani, 346 F.3d 75, 81 (2d Cir. 2003). The Second Circuit has held that "[w]hen a party receives a . . . preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits." Haley v. Pataki, 106 F.3d 478, 483 (2d Cir. 1997) (citing LaRouche v. Kezer, 20 F.3d 68, 75 (2d Cir. 1994)).

Here, plaintiffs move, pursuant to 42 U.S.C. § 1988(b), for interim attorneys' fees for work performed up to March 25, 2005, and if their motions for partial summary judgment and a permanent injunction are granted, from March 25, 2005, to the present. They allege that they are the prevailing party because their motions for class certification and preliminary injunction were granted in Marriott I; moreover, if their current motions for partial summary judgment and a permanent injunction are granted, they argue they have achieved actual success on the merits of those claims, which would entitle them to attorneys' fees for their work performed to the present date. Defendants oppose, claiming that plaintiffs' application for interim attorneys' fees is premature. They argue that (at the time of filing response papers) an appeal of the preliminary injunction is pending, and that the grant of a preliminary injunction was not based on the merits. Thus, they claim that plaintiffs' motion for interim attorneys' fees should be denied.

Plaintiffs must be considered the prevailing party.  As required by Farrar, plaintiffs have obtained enforceable judgments, in the form of injunctions, against the defendants.  In Marriott I, defendants were preliminarily enjoined from conducting the "change out" procedure, based on a "strong likelihood that the strip search at issue here, conducted as a matter of course without reasonable suspicion, will be found violative of the Fourth Amendment." 227 F.R.D. at 174.  The Second Circuit affirmed the injunction.  See Marriott II, 2005 WL 3117194, at *1.  On the same day Marriott I was decided, defendants altered their "change out" procedure, such that "[a]t no time will an inmate's naked body be viewed without reasonable suspicion that the inmate possesses contraband or a weapon."  (Docket No. 203, Pls.' Ex. K.)  This is an obvious change in defendants' behavior towards prospective members of plaintiffs' class.

Moreover, plaintiffs have today demonstrated actual success on the merits of their claim that defendants' "change out" procedure is an unconstitutional violation of the Fourth Amendment's prohibition against unreasonable searches.  They have proved that they are entitled to partial summary judgment for liability against the County, and that a permanent injunction against defendants is necessary.  Plaintiffs have obtained multiple enforceable judgments against defendants on the merits of their claim.  Therefore, under 42 U.S.C. § 1988(b), they are considered a prevailing party and are entitled to an interim award of attorneys' fees against the County for the work they have performed to date.

### D. Defendants' Motion for a Certificate of Appealability

Defendants have also filed a separate motion seeking a certificate of appealability pursuant to 28 U.S.C. § 1292(b), regarding the October 14, 2005, Order denying their motion for partial summary judgment dismissing plaintiffs' claims for compensatory damages, punitive

damages, and attorney fees.  Plaintiffs oppose, alleging that defendants cannot demonstrate any of the requirements for certification under section 1292(b), and further claiming that defendants' motion for certification is untimely.

A party seeking leave to appeal a district court's interlocutory order, pursuant to section 1292(b), must first obtain certification from that court.  Traub v. Cornell Univ., No. 94 CV 502, 1999 WL 224804, at *2 (N.D.N.Y. Apr. 12, 1999); Gilbert v. Seton Hall Univ., No. 94 CV 1534(SJ), 2001 WL 1602167, at *2 (E.D.N.Y. Nov. 27, 2001).  In order to certify, the district court must find: (1) the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and that (3) "appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).[14]  "District courts have substantial discretion in deciding whether to certify a question for interlocutory appeal, see Brown v. City of Oneonta, 916 F. Supp. 176, 180 (N.D.N.Y. 1966) (citing, *inter alia*, D'Ippolito v. Cities Serv. Co., 374 F.2d 643, 649 (2d Cir. 1967)), and "should 'exercise great care in making a [section] 1292(b) certification,'" Traub, 1999 WL 224804, at *2 (quoting Westwood Pharms., Inc. v. Nat'l Fuel Gas Dist. Corp., 964 F.2d 85, 89 (2d Cir. 1992)).  Only "exceptional circumstances [will] justify a departure from the basic policy of postponing

---

[14] Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Id.

appellate review until after the entry of a final judgment." Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Montonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 25 (2d Cir. 1990) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475, 98 S. Ct. 2454, 2461 (1978)).

Defendants have not demonstrated any of the criteria for certification for interlocutory appeal.  The October 14, 2005, Order denying defendants' motion for partial summary judgment does not involve controlling questions of law.  Furthermore, defendants have not demonstrated that there is a substantial difference of opinion warranting immediate review or that certification would advance the ultimate termination of this action.  Accordingly, defendants' motion for a certificate of appealability will be denied in its entirety.

## IV. CONCLUSION

Defendants' "change-out" policy, applicable to all admittees without regard to reasonable suspicion, is tantamount to a strip search.  As the settled law of this Circuit requires particularized suspicion before strip searching any person arrested for a misdemeanor or other minor offense, defendants' policy is unconstitutional.  Thus, plaintiffs are entitled to summary judgment as to the liability of the County.

The plaintiff class has standing to seek and obtain prospective injunctive relief. Because they have demonstrated actual success on the merits of their claim, plaintiffs are also entitled to permanent injunctive relief.

Plaintiffs have obtained multiple enforceable judgments against defendants on the merits of their claim.  Therefore, under 42 U.S.C. § 1988(b), they are a prevailing party and are entitled to an interim award of attorneys' fees for the work they have performed to date.

Defendants have not demonstrated that the October 14, 2005, Order denying defendants' motion for partial summary judgment as to plaintiffs' motions for compensatory damages, punitive damages, and attorneys' fees involves controlling questions of law. Nor have they demonstrated that there is substantial difference of opinion that warrants immediate review, or that certification will advance the ultimate termination of the action. Accordingly, certification for interlocutory appeal is unwarranted.

Therefore, it is

ORDERED that

1. Plaintiffs' motion for partial summary judgment as to the liability of the County is GRANTED;

2. Plaintiffs' motion to preclude the testimony of George M. Camp is GRANTED;

3. Plaintiffs' motion for a permanent injunction is GRANTED;

4. Defendants are PERMANENTLY ENJOINED from conducting a strip search, as set forth in the Jail's "change out" procedure, with regard to all persons being placed into the custody of the Montgomery County Jail after being charged with misdemeanors, violations, violations of probation or parole, traffic infractions or other minor crimes, or held on civil matters, without reasonable suspicion that such persons are secreting contraband and/or weapons;

5. a. Plaintiffs' motion for an interim award of attorneys' fees and expenses against the County is GRANTED;

   b. Plaintiffs shall file and serve, on or before April 26, 2006, an appropriate application for interim attorneys' fees and expenses for work performed up to April 26, 2006;

      c.  Defendants may file and serve a response on or before May 10, 2006;

      d.  The application will be taken on submit; and

    6.  Defendants' motion for a certificate of appealability is DENIED.

    IT IS SO ORDERED.

_____
United States District Judge

Dated:  April 12,  2006
         Utica, New York.